UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MELISSA  YORK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:15-cv-01447-TWP-MJD |
| | ) | |
| CAROLYN W. COLVIN, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Melissa York requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Disability Insurance ("DIB") under Title II and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3).[1]  For the reasons set forth below, the Magistrate Judge recommends that the District Judge **AFFIRM** the decision of the Commissioner.

## I. Background

York filed her application for SSI on July 16, 2013 [Dkt. 14 at 155 (R. 152)] and for DIB on October 10, 2014 [Dkt. 14 at 143 (R. 140)], alleging December 1, 2012 as the onset date of disability.  [Dkt. 14 at 143, 155 (R. 140, 152).]  In her disability report filed in conjunction with

---

[1] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI.  However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

her application, York listed severe knee osteoarthritis, degenerative disc disease, neck pain, phlebitis and thrombophlebitis of superficial vessels of extra-varicose veins, osteoarthritis of the knee, bilateral carpal tunnel syndrome, dysphagia, obstructive sleep apnea, palpitations, left shoulder pain, edema, seasonal allergic rhinitis, and cervical lymphadenopathy as her disabling conditions.[2]  [Dkt. 14 at 159 (R. 156).]  York's application for DIB was denied initially on October 3, 2013 [Dkt. 14 at 57 (R. 55)] and upon reconsideration on December 31, 2013 [Dkt. 14 at 74 (R. 72)].  York timely requested a hearing on her application, which was held before Administrative Law Judge Daniel J. Mages ("ALJ") on October 8, 2014.  [Dkt. 14-5 at 58 (R. 881).]  The ALJ issued his decision on November 13, 2014, again denying York's applications.[3] [Dkt. 14 at 26 (R. 24).]  On April 27, 2015 the Appeals Council denied York's request to review the ALJ's decision, making it the final decision of the Commissioner for the purposes of judicial review.  [Dkt. 14 at 13 (R. 11).]  York timely filed her Complaint with this Court on September 15, 2015, seeking judicial review of the Commissioner's decision.  [Dkt. 1; Dkt. 14 at 9 (R. 7) (granting additional time to file complaint).]

## II.  Legal Standard

To be eligible for DIB or SSI, a claimant must have a disability pursuant to 42 U.S.C. § 423.  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

---

[2] York recited the relevant factual and medical background in extensive detail in her opening brief.  [*See* Dkt. 20.] The Commissioner, unless otherwise noted herein, does not dispute these facts.  [*See* Dkt. 21.]  Because these facts involve York's sensitive and otherwise confidential medical information, the Court will incorporate by reference the factual background the parties' briefs and articulate specific facts as needed below.

[3] At the hearing, the ALJ suggested that York file her SSI application and have it escalated to the hearing level for determination with her DIB claim.  [Dkt. 14 at 27 (R. 29).]

To determine whether a claimant is disabled, the ALJ employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, or one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and she is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three and either cannot perform her past relevant work or has no past relevant work but can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity (RFC), identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work related activities. S.S.R. 96-8p, 1996 WL 374184.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.2d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The ALJ "need not contain a complete written evaluation of every piece of evidence." *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)). However, the "ALJ's decision must be

based upon consideration of all the relevant evidence." *Herron v. Shalala* 19 F.3d 329, 333 (7th Cir. 1997). To be affirmed, the ALJ must articulate his analysis of the evidence in his decision. The ALJ must "provide some glimpse into his reasoning" and "build an accurate logical bridge from the evidence to his conclusion." *Dixon*, 270 F.3d at 1176. The scope of review is confined to the rationale offered by the ALJ. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010).

### III.  The ALJ's Decision

In his decision, the ALJ first determined that York met the insured status requirements of the Act through December 31, 2012 and had not engaged in substantial gainful activity since December 1, 2012. [Dkt. 14 at 31 (R. 29).] At step two, the ALJ found York's severe impairments to include "osteoarthritis of the right knee; a torn left rotator cuff; carpal tunnel syndrome; degenerative disc disease; gastroesophageal reflux disease (GERD); a hiatal hernia; obesity status post bariatric surgery; depression; and anxiety." [Dkt. 147 at 31-32 (R. 29-30).] The ALJ further found that York had a "history of asthma and hypertension," but concluded that these were not severe impairments. [Dkt. 147 at 32 (R. 30).] At step three the ALJ found that York did not have an impairment or combination of impairments that meets or medically equals a Listing, specifically considering Listing 1.02 for major dysfunction of joints; Listing 1.03 for reconstructive surgery or surgical arthrodesis of a major weight-bearing joint; Listing 12.04 for disorders of the spine; Listing 5.00 for digestive disorders of the digestive system; Listings 1.00Q, 3.00I, and 4.00F as they pertain to obesity; Listing 11.14 for peripheral neuropathy; Listing 12.04 for affective disorders; and Listing 12.06 for anxiety related disorders. [Dkt. 14 at 32-34 (R. 30-32).]

Before step four, "after careful consideration of the entire record," the ALJ determined that York had the RFC to perform "a range of sedentary work."  [Dkt. 14 at 34 (R. 32).] Specifically, the ALJ found that York requires the following restrictions:

> sitting up to sixty minutes at one time and six hours during an eight-hour workday; standing and walking up to thirty minutes at one time and two hours during an eight-hour workday, with the use of a cane for walking; lifting, carrying, pushing and pulling ten pounds occasionally and five pounds frequently; occasionally climbing ramps and stairs, balancing, stooping and crouching; no kneeling or crawling; no climbing ladders, ropes or scaffolds; no work around dangerous moving machinery or at unprotected heights; frequent fingering and handling bilaterally; no overhead work with the left upper extremity; no vibrating tools; and no more than superficial interaction with the public, coworkers or supervisors.

[*Id.*]  At step four, the ALJ found that York is unable to perform her past relevant work as a department supervisor, customer service representative, and transport driver.  [Dkt. 14 at 41 (R. 39).]  After considering York's age, education, work experience, and RFC, the ALJ found that York could perform several jobs that existed in significant numbers in the national economy.  [*Id.*] These jobs included information clerk, assembler, and hand packager.  [Dkt. 14 at 42 (R. 40).] Based on these findings, at step five the ALJ concluded that York was not disabled under the Act. [*Id.*]

## IV.  Discussion

York challenges the ALJ's decision on many grounds, directing specific arguments to the step three determination; the physical RFC determination; York's credibility determination; and the mental RFC determination.  The Court addresses each in turn.

### A.  Step Three

York first challenges the ALJ's finding that York did not have a combination of impairments that medically equal one of the Listings.  The bulk of York's argument is directed at the ALJ's failure to obtain an updated medical expert's opinion to consider a lumbar spine MRI

conducted in April 2014 ("2014 MRI"), after the state agency reviewing physicians submitted their Disability Determination forms in 2013 and 2012.[4]  York additionally lists a knee replacement surgery, gastric bypass, and hernia repair surgery as new evidence requiring expert evaluation.[5]  In response, the Commissioner maintains that the ALJ was not required to obtain an updated expert opinion because the evidence provides no new basis for determining that York's conditions equal a Listing.  In reply, York reiterates her arguments and argues that the Commissioner is endorsing the ALJ's attempt to play doctor by not requesting an updated medical expert's opinion.

The step-three determination of whether a listing is met or equaled is an "ultimate legal question" left to the ALJ.  S.S.R. 96-6P, 1996 WL 374180; *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004).  The claimant "has the burden of showing that his impairments meet a listing," and the ALJ's decision as to whether a listing is met or equaled must be affirmed if supported by substantial evidence.  *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). Whether the ALJ's decision is supported by substantial evidence depends in part upon whether the properly considered the opinion of an expert in making the medical equivalency

---

[4] In this case, York had two lumbar MRIs.  The first, conducted in January 2013, revealed degenerative disc disease and facet disease of the lumbar and lower thoracic spine.  [Dkt. 14-2 at 151 (R. 480).]  This MRI was available to and reviewed by the state agency reviewing physicians at the initial and reconsideration levels.  [*See* Dkt. 14 at 53, 67 (R. 49, 65).]  The second, conducted in April 2014, revealed multilevel degenerative changes and grade 1 spondylolisthesis.  [Dkt. 14-5 at 8-9 (R. 831-32).]  This MRI was conducted after the reviewing physicians rendered their opinions, which therefore could not take the 2014 MRI into account.

[5] York also briefly suggests that the ALJ was required to engage in further discussion of medical equivalence [Dkt. 20 at 31], but this suggestion is too perfunctory to warrant further discussion, *see United States v. Useni*, 516 F.3d 634, 658 (7th Cir. 2008) ("We have repeatedly warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." (internal quotation omitted)).  On its merits, this argument fails as well.  The ALJ engaged in a thorough discussion of the various impairments that could medically equal a Listing and explained which Listings he considered.  Because York fails to point to any specific Listing that required more discussion, and because the ALJ's decision must "be read as a whole [and] need not reiterate the same information in multiple parts of the decisions," *Barnhill v. Colvin*, No. 1:15-cv-1960-JMS-MJD, 2016 WL 6680358, at *5 (S.D. Ind. Nov. 14, 2016), the Court concludes that the ALJ's ample discussion of the relevant evidence satisfies his duty to provide "more than a 'perfunctory analysis'" as to the issue of medical equivalence, *Wurst v. Colvin*, 520 F. App'x 485, 488 (7th Cir. 2013) (quoting *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006)).

determination.  *E.g.*, S.S.R. 96-6P, 1996 WL 374180; *Barnett v. Barnhart*, 381 F.3d 664, 670

(7th Cir. 2004); 20 C.F.R. § 404.1526.  This requirement is usually satisfied by obtaining and

considering the opinion of a state consulting physician as submitted on a disability determination

form.  *Barnett*, 381 F.3d at 671; S.S.R. 96-6p, 1996 WL 374180, at *3.

In some circumstances, however, and at the discretion of the ALJ, an updated medical

opinion may be required to address additional evidence.[6]  S.S.R. 96-6p, 1996 WL 374180, at *3-

4; *see Poyck v. Astrue*, 414 F. App'x 859, 861 (7th Cir. 2011).  Specifically, when the additional

evidence may, "in the opinion of the administrative law judge," be sufficient to change a medical

consultant's finding of a lack of medical equivalency, the ALJ must obtain an updated opinion.

S.S.R. 96-6p, 1996 WL 374180.  The ALJ abuses his discretion where he fails to engage with the

updated medical evidence or substitutes his own unsupported layman's view of medical evidence

for that of a physician.  *Compare Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (reversing

disability determination where ALJ opined that "no medical evidence proved that [the

claimant's] condition had worsened" and concluded that the new evidence was "similar to

existing evidence" despite new evidence suggesting a need for hip replacement) *and Goins v.*

---

[6] York's repeated selective quoting from Social Security Ruling 96-6p omits the relevant language that vests the decision to obtain an additional expert opinion in the discretion of the ALJ.  York calls the Commissioner's argument that this decision is discretionary "unavailing" [Dkt. 24 at 4] and quotes, three times in her two briefs, the portion of S.S.R. 96-6p that provides: "When an updated medical judgment as to medical equivalence is required at the administrative law judge level in either of the circumstances above, the administrative law judge must call on a medical expert."  S.S.R. 96-6p, 1996 WL 374180, at *4; [Dkt. 20 at 32-33; Dkt. 24 at 4-5].  York emphasizes the phrase "the administrative law judge *must* call" but omits the language "in either of the circumstances above."  Thus, the language York quotes explains **what** the ALJ must do in certain circumstances, but provides no detail on **when** the ALJ must do the required action (of consulting an updated medical judgment).

Surely enough, the "circumstances above" provide, in relevant part, that the ALJ must acquire an updated opinion "[w]hen additional medical evidence is received that **in the opinion of the administrative law judge** . . . may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments."  S.S.R. 96-6p, 1996 WL 374180, at *4 (emphasis added).  Of course, as the Court will explain (and as the cases to which York cites demonstrate), the ALJ's discretion is not boundless.  But abuse of discretion is in fact the correct standard by which the Court must assess the ALJ's decision not to obtain an updated medical opinion.

*Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (reversing disability determination where ALJ entirely ignored new condition in medical evidence and "made no effort to compare" the new MRI with previous MRI) *with Thomas v. Astrue*, No. 1:09-cv-808-SEB-JMS, 2010 WL 2485556 (S.D. Ind. June 11, 2010) (affirming disability determination where ALJ "considered all of the evidence," "sufficiently explained his findings," and "did not erroneously discount or disregard information in the record") *and Bush v. Astrue*, No. 1:08-cv-1173-WTL-TAB, 2010 WL 76454, at *4 (S.D. Ind. Jan. 4, 2010) (affirming disability determination where ALJ identified and "carefully considered" medical evidence). Moreover, the Court "will not remand a claim to the Commissioner without a showing" by the claimant, consistent with the burden of proof at step three, that remand "might lead to a different result." *Johnson v. Colvin*, No. 1:14-cv-618-SEB-DKL, 2015 WL 5032267, at *6 (S.D. Ind. Aug. 24, 2015).

York relies primarily upon *Stage* and *Goins* to support her argument that remand is required to obtain an updated medical opinion. In *Stage*, the ALJ essentially ignored the opinion of one Dr. Oni, who "diagnosed significant hip deformity, a restricted range of motion, and the need for a total left hip replacement." 812 F.3d at 1125. The Seventh Circuit reversed the ALJ for deciding that this newly-found evidence was "'similar' to existing evidence" and thus deciding, without the benefit of any evidence in support, that "Stage's need for a hip replacement would not have affected her supposed ability to stand and walk for six hours a day, upon which the ALJ's denial of benefits depended." *Id.* Furthermore, the ALJ continued to rely on the consulting physician's "outdated assessment." *Id.*

Similarly, in *Goins*, the claimant had an MRI after the consulting physicians had rendered their opinions. The ALJ, however, "made no effort to compare" the new MRI with a previous one, did not use the results of the MRI in evaluating the claimant's testimony, and wholly

ignored the "Chiari I malformation" that the MRI revealed. 764 F.3d at 680. The Chiari I

malformation was new evidence that directly supported the claimant's alleged migraine

headaches. Id. at 680-81.

The Court concludes that neither Stage nor Goins is applicable to this case such that

remand is not required for two distinct reasons. First, the onus is on the claimant to "explain or

show how the items of evidence that she cites impact the disability determination, how their

consideration might change the opinions of the state-agency physicians on Listings satisfaction

and, thus, the ALJ's determination of disability." Johnson, 2015 WL 5032267, at *6; E.W.D.G.

ex rel. Garcia v. Colvin, No. 1:12-cv-01782-JMS-MJD, 2013 WL 3154128, at *6 (S.D. Ind. June

21, 2013) (rejecting argument that ALJ erred at step three where "a string of citations to various

diagnoses [was] all [the claimant] provided"). York does not point to a single Listing to explain

why remand is required and instead responds that medical equivalence "is proper province of a

medical expert, not the Plaintiff. Medical equivalence is a judgment from a medical

professional, which Plaintiff is not." [Dkt. 24 at 2.] But this is an inaccurate statement of the

law. While, as the Court has explained, an expert's opinion must be considered as part of the

equivalence determination, the ultimate decision on medical equivalence rests with the ALJ and

the burden of proving disability at step three rests with the claimant. It is therefore wholly

insufficient to "merely list[] items of evidence and make[] a conclusory statement that they are

significant," id., because such statements do not aid the Court in assessing whether the ALJ

abused his discretion in concluding that the updated evidence would not "change the . . .

consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the

Listing of Impairments," S.S.R. 96-6p, 1996 WL 374180, at *4. The ALJ considered ten

different Listings by name, and the Court will not guess at which of these may have required

further consideration. That was York's burden to satisfy. *See Johnson*, 2015 WL 5032267; *E.W.D.G.*, 2013 WL 3154128.

Second, as an additional basis for affirming the ALJ's step three determination, the Court further concludes that the ALJ properly addressed the updated evidence and did not impermissibly play doctor—particularly when considered in contrast to the ALJ's opinions in *Stage* and *Goins*. Unlike both *Stage* and *Goins*, the ALJ did not inappropriately continue to rely upon the "stale" disability determination forms from late 2013. To the contrary, the ALJ noted that he had considered updated evidence and concluded that it required an RFC "somewhat more restrictive than" those proposed by the reviewing physicians. [Dkt. 14 at 40 (R. 38).] Nor did the ALJ wholly ignore new findings (as in *Goins*) or conclude without any basis that the updated evidence was similar to previous evidence (as in *Stage*). Instead, the ALJ in this case carefully evaluated the new evidence and used it to credit York's allegations as to the severity of her conditions. [*E.g.*, Dkt 14 at 36 (R. 34) (observing, in discussion of 2014 knee replacement, that "claimant testified that she has difficulty with prolonged standing and walking" and therefore "limit[ing] her to sedentary work with the use of a cane"); Dkt. 14 at 38 (R. 36) (discussing 2014 MRI, accommodating York's "alleged problems with prolonged sitting," and imposing postural and exertional restrictions).

Furthermore, the ALJ provided reasoned analyses for treating each new medical record as he did. Rather than improperly impose his own view of the medical evidence, the ALJ grounded his analysis in reasonable observations based in the record—none of which York disputes. With regard to the 2014 MRI, the ALJ observed that, "in light of the updated MRI, there has been no new treatment prescribed for the claimant's back" and that York has "essentially relied on medication for pain control with good response." [Dkt. 14 at 37 (R. 35).] And regarding the

2013 bariatric surgery, the ALJ observed that York endured nausea and vomiting for some time thereafter.  Later, however, York underwent an upper gastrointestinal endoscopy, following which "the record is devoid of evidence regarding gastrointestinal symptoms, which suggests that said procedures were effective."  [Dkt. 14 at 38 (R. 36).]  Lastly, the ALJ noted following the June 2014 knee replacement that York required manipulation under anesthesia in September 2014.  The ALJ further noted that, after the manipulation, "claimant has yet to regain full range of motion in the right knee; however, a reasonable amount of time has not been achieved."  [Dkt. 14 at 36 (R. 34).]  This was imminently reasonable, as the manipulation procedure occurred only one month before the hearing before the ALJ.  As York does not dispute any of these observations or argue that the ALJ ignored any evidence, and because each observation is rooted in the evidence before the ALJ, the Court concludes that the ALJ's careful and thorough discussion of the medical evidence sufficiently supports his step three determination.  *See Thomas*, 2010 WL 2485556 ("[The ALJ] sufficiently explained his findings and the reasoning for them in his denial and he did not erroneously discount or disregard information in the record. For these reasons, we find that the ALJ did not commit legal error by failing to summon a medical expert to determin[e] equivalence; thus remand to obtain additional expert medical testimony is not necessary.").

The Seventh Circuit has observed that "no record is 'complete'—one may always obtain another medical examination, seek the views of one more consultant, wait six months to see whether the claimant's condition changes, and so on.  Taking 'complete record' literally would be a formula for paralysis, undermining all of the objectives of simplified procedure." *Kendrick v. Shalala*, 998 F.2d 455, 456-57 (7th Cir. 1993).  That is why the decision to determine when the record is "complete" is left to the ALJ's discretion, subject to limitations where new evidence

11

undermines the conclusion that the claimant is not disabled.  Because York has failed to explain how the new medical evidence could possibly impact the medical equivalence determination at step three, and because the ALJ appropriately addressed the new medical evidence, the Court should find that substantial evidence supports the ALJ's decision.

### B.  Credibility Determination

York relies in part upon her own testimony to support her remaining claims of error. Thus, while York's challenge to the ALJ's credibility assessment is her penultimate argument in her brief, the Court finds it appropriate to address it here.  York argues that the ALJ improperly assessed her credibility solely on the basis of objective medical evidence and ability to engage in daily activities.  In response, the Commissioner argues that the ALJ thoroughly and properly weighed the evidence.  In reply, York reiterates her arguments from her initial brief.

The ALJ's credibility assessment warrants "special deference because the ALJ is in the best position to see and hear the witness and determine credibility." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).  While the ALJ may not disregard a claimant's testimony about the intensity of pain or its effect on her ability to work "solely because [it is] not substantiated by objective medical evidence," S.S.R. 96-7p, 1996 WL 374186, the ALJ is still entitled to resolve any "discrepancies between the objective evidence and self-reports," *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010).  At bottom, the critical inquiry remains whether the ALJ's credibility determination is "reasoned and supported," as it may be overturned only if it is "patently wrong." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).  A credibility determination is patently wrong if it "lacks and explanation or support." *Id.*

In this case, the ALJ engaged in a thorough discussion of York's testimony and reached a credibility determination that is not patently wrong.  Indeed, throughout the analysis, the ALJ

expressly credited York's testimony in imposing RFC restrictions.[7]  York's first argument—that

the ALJ erred in relying upon "the objective medical evidence alone"—is belied by her own

brief.  Indeed, York additionally argues that the ALJ erred in considering York's daily activities.

The Seventh Circuit has addressed this situation, concluding that an ALJ cannot

deny disability "'*solely* because the available objective medical evidence does not substantiate

[the claimant's] statements.' 20 C.F.R. § 404.1529(c)(2) (emphasis added). Here, the ALJ

considered the objective evidence along with a host of other factors named in the

regulations, *see id.* § 404.1529(c)(2)-(4), like . . . activity levels . . . ." *Simila v. Astrue,* 573 F.3d

503, 519 (7th Cir. 2009).  The ALJ in this case further considered York's treatment history; the

fact that York was "fresh out of manipulation surgery" [Dkt. 14 at 39 (R. 37)]; and York's

history of positive responses to medicinal and surgical treatment [*e.g.*, Dkt. 14 at 36 (R. 34)

("[A]t her five-week follow up appointment [after knee replacement], the claimant reported that

she was doing better. . . . She also indicated that her activity level was without assistance."); Dkt.

14 at 37 (R. 35) (noting, following bariatric surgery, that York "showed improved functioning in

the . . . spine")].  These were all appropriate factors to consider.

Second, York contends that the ALJ improperly discounted her testimony because of her

ability to engage in activities of daily living.  The Seventh Circuit has unequivocally stated that

an ALJ may not "equat[e] activities of daily living with an ability to work." *Loveless v. Colvin,*

810 F.3d 502, 508 (7th Cir. 2016).  But York mischaracterizes the ALJ's analysis.  The ALJ

considered York's description of her daily activities solely as "one factor that weighed against

[her] account of disabling limitations." *Id.* ("Rather, the ALJ considered Loveless's description

---

[7] For example, York testified that she has difficulty standing and walking for a prolonged period of time.  The ALJ therefore limited York to "sedentary work with the use [of] a cane for walking." [Dkt. 14 at 36 (R. 34)].  York testified to a torn rotator cuff from a car accident.  In response, the ALJ imposed a complete restriction on "overhead reaching" with the left arm.  [Dkt. 14 at 37 (R. 35).]

of his daily activities in assessing whether his testimony about the effects of his impairments was credible or exaggerated. For example the ALJ considered Loveless's ability to perform light household chores, drive a car, and shop for groceries."  (citations omitted)); *see* 20 C.F.R. § 404.1529(c)(3)(i) (explaining that agency will consider daily activities in evaluating severity of claimant's symptoms); SSR 96-7P, 1996 WL 374186, at *3 (directing ALJ to consider daily activities in determining credibility of claimant's statements about symptoms); [Dkt. 14 at 40 (R. 38) (observing, for example, that York can "groom, cook simple meals, do basic chores, and go out as needed for appointments or groceries" and characterizing this as a "factor")].  The ALJ referenced and considered York's daily activities, but York has not demonstrated that the ALJ gave them "undue weight."  *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("Some weight [for daily activities] is appropriate.")

Finally, York's briefly addresses what appears to be her primary complaint about the ALJ's credibility determination, challenging the ALJ's RFC determination that York may sit "up to sixty minutes at one time and six hours during an eight-hour workday."  [Dkt. 14 at 34 (R. 32).]  The only evidence to which York points in support of her argument that she cannot sit for more than ten or fifteen minutes at a time is her own hearing testimony.  York explained that she must spend much of her time "either in my recliner or laying [sic] in bed, because I have to keep my leg propped up for the swelling.  And then with my back pain, then I have to lay down quite a bit." [Dkt. 14-5 at 80-81 (R. 903-04).]  Thus, her allegations of an inability to sit are directly tied to her need to elevate her knee due to her recent surgery.  The ALJ specifically observed that York was "fresh out of manipulation surgery" on her knee.  [Dkt. 14 at 39 (R. 37).]  If there was another basis to conclude that York required permanent restrictions on sitting that was not tied to York's recent surgery, it was York's responsibility as a claimant represented by counsel to elicit

14

such testimony or obtain such evidence.  *See Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987).

In short, York has not demonstrated patent error in the ALJ's credibility determination. Thus, the Court should not reverse the ALJ's disability findings on this ground.

## C. Physical RFC

York briefly challenges the ALJ's physical RFC determination, largely arguing that "the ALJ's errors at Step 3 flowed into his RFC determination."[8]  [Dkt. 20 at 31.]  York additionally argues that "there is no correlation from the raw findings from the [2014 MRI] to support the ALJ's RFC"—specifically, the limitations imposed on York's ability to sit and stand or walk. [Dkt. 20 at 34.]  Rather, York contends that her own testimony establishes that York requires greater restrictions.

The Court has already explained that the ALJ did not improperly evaluate the 2014 MRI at step three and was not required to obtain an updated expert opinion; the same holds true at the RFC stage between steps three and four.  Moreover, York's claim that the 2014 MRI requires further postural and exertional restrictions than those imposed by the ALJ is rampant speculation. As the ALJ explained (and as York has not contested), "in light of the updated MRI, there has been no new treatment prescribed for the claimant's back."  [Dkt. 14 at 37] (R. 35).]  Nonetheless, the ALJ credited York's complaints and imposed greater RFC postural and exertional limitations than those suggested by the reviewing physicians.  The ALJ's explanation was sufficient to justify these limitations, and the Court may not "reweigh the evidence or substitute [its] judgment for that of the ALJ."  *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008).

---

[8] York also states that, "[as] a threshold matter, the ALJ did not assign any weight" to the opinions of the state agency reviewing physicians.  [Dkt. 20 at 33.]  But York cites to no authority requiring the ALJ to assign a specific "weight" to such opinions, and unsupported arguments are waived.  *See United States v. Useni*, 516 F.3d 634, 658 (7th Cir. 2008).

To the extent that York is contending that the ALJ should have sought more evidence in light of the 2014 MRI, "[w]hen an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is making his strongest case for benefits." *Glenn*, 814 F.2d at 391.  York has provided no reason for the Court to deviate from this assumption.  York's broad, perfunctory challenge to her physical RFC restrictions does not provide a basis for remand.

### D.  Mental RFC

York contends that the ALJ improperly considered York's social functioning; concentration, persistence, or pace; and ability to handle stress.  As with all of the ALJ's evidentiary findings, the Court must defer to the ALJ's assessment of a claimant's mental impairments as long it is supported by substantial evidence that a reasonable person would accept as adequate.  *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).  The Court first addresses York's argument that the ALJ gave the treating medical professionals' opinions improper weight.  The Court then addresses York's arguments that the ALJ failed to address key evidence in evaluating each of the contested areas of mental functioning.

#### 1.  Opinion Weight

York challenges the ALJ's decision to grant Ms. Moody (a treating mental health clinician) and Dr. Montgomery's reports little weight (collectively, "Ms. Moody"),[9] contending that the ALJ failed to provide good reasons for this assessment.  In response, the Commissioner maintains that the ALJ appropriately explained why he accorded little weight to Ms. Moody's reports.  In reply, York contends that the Commissioner merely restates the ALJ's findings.

---

[9] Ms. Moody's reports were cosigned by Dr. Montgomery.  [*See, e.g.*, Dkt. 14-3 at 25 (R. 518).]

A treating physician's opinion is entitled to controlling weight if it is (1) well supported by medically acceptable clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the record. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); 20 C.F.R. § 404.1527(c)(2). However, a claimant "is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work.' Under the Social Security regulations, the Commissioner is charged with determining the ultimate issue of disability." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). If the ALJ finds that the treating physician's opinion is not entitled to controlling weight, he must then consider several factors relating to the treatment history and opinion depth to determine the proper weight to give the treating physician's opinion. *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008); 20 C.F.R. § 404.1527(d)(2). The ALJ must provide "good reasons" for declining to grant a treating physician's opinion controlling weight and an explanation of the factors that support the ultimate weight determination. *Larson v. Astrue*, 615 F.3d 744, 749, 751 (7th Cir. 2010); 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). The ALJ must "minimally articulate" these good reasons. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

The ALJ was on firm footing in determining that Ms. Moody's opinion warranted little weight. The ALJ explained that Ms. Moody's conclusions were "inconsistent with the contemporaneous records." [Dkt. 14 at 40 (38).] The ALJ noted several examples of such inconsistencies. For example, while Ms. Moody observed that York's "mood is consistently fluctuating" such that "with her poor physical health it would be difficult for Melissa to work most jobs" [Dkt. 14-3 at 24 (R. 517)], she assigned a global assessment of functioning (GAF) score of 65 (indicating mild symptoms) [Dkt. 14-3 at 20 (R. 513)]. York argues that the ALJ's

17

citation to the GAF score is insufficient because it was a solitary occurrence.  But the ALJ cited to the GAF score only to explain why he was attributing little weight to Ms. Moody's conclusion from **the same opinion** as the GAF score, making it more relevant than it otherwise might have been in the larger picture.  More importantly, the ALJ cited to additional evidence that provides ample grounds for his weight assignment, including continuing signs of improvement with coping skills.  [*E.g.*, Dkt. 14 at 39 (R. 37) (citing Dkt. 14-3 at 19-28 (treatment notes indicating, for example, that York engaged in "weekly individual therapy with positive response").]

Finally, York argues that the ALJ erred in disclaiming as "speculative and without support from treatment notes" Ms. Moody's conclusion that she "foresee[s] a continued decline in functioning if Melissa does not receive assistance financially."  [Dkt. 14 at 40 (R. 38); Dkt. 20 at 2 (R. 845).]  But the ALJ need only give an opinion controlling weight if it is well supported by "medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1520(c)(2).  As the Commissioner explains, nowhere does Ms. Moody appear to use "acceptable clinical and laboratory diagnostic techniques" to reach this conclusion;[10] thus, it was not entitled to controlling weight.  Because the ALJ minimally articulated with "good reasons" the weight assigned to Ms. Moody's opinions, the Court should not reverse the ALJ's disability determination on this ground.

### 2.  Social Functioning

York maintains that the ALJ inappropriately assessed York with moderate limitations in social function while "meaningful consideration of the evidence shows that Plaintiff has at least marked limitations."[11]  [Dkt. 20 at 28 (emphasis in original).]  In support, York cites to a bevy of

---

[10] York does not explain how Ms. Moody's observations about stress or mood swings constitute a medically acceptable technique so as to trigger the presumption of controlling weight to this conclusion.

[11] York also faults the ALJ for giving limited weight to the third-party statement of York's daughter, which the ALJ found "partially credible."  [Dkt. 14 at 40 (R. 38).]  The ALJ was rather inarticulate in explaining that "it does not

evidence that she contends was insufficiently addressed.  In response, the Commissioner maintains that the ALJ properly weighed the relevant evidence.  In reply, York reiterates the arguments from her initial brief.

The ALJ, at step three, assessed York with moderate difficulties in social functioning, citing "social reciprocity . . . within normal limits during a neuropsychological evaluation"; a "positive and cooperative" affect during a mental status evaluation; and her daughter's report that York is able to go out alone.  [Dkt. 14 at 33 (R. 31).]  This was not, however, the "sum total of the ALJ's consideration of Plaintiff's social functioning."  [Dkt. 20 at 36.]  Consistent with Seventh Circuit precedent, "the ALJ's decision should be read as a whole, and that the ALJ need not reiterate the same information in multiple parts of the decision."  *Barnhill v. Colvin*, No. 1:15-cv-1960-JMS-MJD, 2016 WL 6680358, at *5 (S.D. Ind. Nov. 14, 2016) (citing *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004)).  Moreover, the "substantial evidence" standard of review requires that the Court affirm this ALJ if he "minimally articulate[s] his reasoning." *Filus v. Astrue*, 694 F.3d 863, 869 (7th Cir. 2012).

Contrary to York's argument, the "sum total" of the ALJ's consideration of York's social functioning is not limited to the ALJ's discussion.  Considering the ALJ's opinion "as a whole," the Court finds that the ALJ engaged in a careful discussion of the relevant evidence and supported his conclusions with substantial evidence.  For example, York claims that the ALJ failed to address Dr. Nevins findings from her neuropsychological evaluation.  But the ALJ in

_____

appear that the claimant's daughter is a medical or psychological expert or that she was able to review the evidence."  [*Id.*]  Of course a claimant's third-party report will not be an expert—that is not the role of third party reports.  But York does not explain how this inarticulateness requires remand.  Moreover, any error would be harmless since York's daughter's report "did not constitute a separate 'line of evidence.'  Rather, it served strictly to reiterate, and thereby corroborate, [York's] own testimony concerning [her] activities and limitations.  To the extent [the ALJ found York's allegations] concerning [her] disabling pain and physical limitations to be untenable when contrasted with [her] reported daily activities and the relevant medical evidence, he necessarily found" that York's daughter's report was similarly not credible. *Books v. Chater*, 91 F.3d 972, 980 (7th Cir. 1996).

fact engaged in a lengthy discussion of Dr. Nevins's evaluation, noting many of the findings that York claims are so significant.  [Dkt. 14 at 38 (explaining that Dr. Nevins noted that York was tearful, with a restricted affect).]  In short, the ALJ sufficiently supported his finding that York is moderately limited in social functioning.[12]

### 3.   Concentration, Persistence, or Pace

Next, York faults the ALJ for failing to consider the evidence she claims supports greater limitations in concentration, persistence, or pace.  This, again, is simply not the case, as the ALJ cites to and addresses many of the specific findings that York contends were ignored.  York may disagree with the weight assigned to these findings, but York does not explain why the weight assigned was so erroneous as to require remand.

The one contention that requires further explanation is York's contention that the ALJ failed to accommodate York's concentration, persistence, and pace in her RFC.  York notes that the ALJ credited the reviewing physicians' opinions, but contends that the limitation to unskilled work is insufficient and did not reflect what the state agency physicians recommended.  But a close review of the state agency physicians' determinations reveals that the only suggested limitations were in the "ability to carry out detailed instructions."  [Dkt. 14 at 69.]  The ALJ accommodated this restriction by limiting York to unskilled work.  The state agency reviewing physicians further determined that York was "not significantly limited" in any other aspect of concentration and persistence, including, for example, "ability to maintain attention and concentration for extended periods."  [*Id.*]  Thus, the ALJ's RFC determination did not conflict with the reviewing physicians' recommendations, which therefore provides no basis for remand.

---

[12] York also briefly argues that the ALJ's limitation to "no more than superficial interaction" with others in the workplace is insufficient because it "does not address the amount of superficial interaction."  [Dkt. 20 at 38.]  But York fails to support this argument with any authority and it is therefore waived.  *See Useni*, 516 F.3d 634.

### 4. Stress

Finally, York argues that the ALJ failed to accommodate York's ability to handle stress. In response, the Commissioner contends that York failed to establish a need for any further accommodations, given the evidence discussed by the ALJ. In reply, York reiterates her arguments.

York principally relies upon Ms. Moody's observations which, as discussed above, were appropriately given little weight by the ALJ. York also cites to a letter from Ms. Kirkpatrick (a mental health clinician), which cited "severe stressors" that were "negatively impacting [York's] ability to care for herself" [Dkt. 14-1 at 78 (R. 254)], York's own testimony, and the third-party report from York's daughter.

York fails to establish reversible error for three separate reasons. First, the ALJ thoroughly addressed York's records from her mental health counseling—including Ms. Moody and Ms. Kirkpatrick—and concluded that "her resulting symptoms are reasonably controlled with medical management and regular counseling." [Dkt. 14 at 38 (R. 36).] Moreover, much of the evidence cited by York was appropriately discussed and assessed little weight, as explained above. York's challenge to the ALJ's weighing of the evidence is unavailing. Second, the ALJ explained that social interaction makes York anxious and therefore limited York to no more than superficial interaction with others. [Dkt. 14 at 33-34 (R. 31-32).] Even though this restriction is more directly targeted at limitations in social functioning, the ALJ expressly addressed the limitation to social interaction-induced anxiety as well. [Dkt. 14 at 33, 39 (R. 31, 37).] York does not contend that this was insufficient. Third, while York cites to the regulations to explain how some persons may struggle with stress in the work environment, York does not establish that York's particular stress (which York herself explains is exacerbated "if something reminds

21

her of her late husband" [Dkt. 20 at 42]) would manifest itself similarly in a work environment limited to superficial interactions with others.  The Court should decline to reverse the ALJ's disability determination on this ground.  *See Barnhill v. Colvin*, No. 1:15-CV-1960-JMS-MJD, 2016 WL 6680358, at *5 (S.D. Ind. Nov. 14, 2016) ("Because the ALJ's determination was supported by the evidence and she articulated her rationale, the Court will not reweigh her determination.").

## V.  Conclusion

For the aforementioned reasons, the Court should find that York has failed to demonstrate reversible error in the ALJ's determination that York is not disabled. The District Judge should therefore **AFFIRM** the Commissioner's decision.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated:  13 DEC 2016

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the court's ECF system.

22